In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 25-2129

BRIAN PFALZGRAF,

*Plaintiff-Appellee,*

*v.*

RUSK COUNTY, WISCONSIN and BEN REISNER,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:23-cv-00877 — **James D. Peterson,** *Chief Judge.*

———————————

ARGUED FEBRUARY 19, 2026 — DECIDED AUGUST 12, 2026

———————————

Before EASTERBROOK, PRYOR, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* A deputy of the Rusk County, Wisconsin Police Department began following Plaintiff Brian Pfalzgraf, supposedly on a hunch. When the deputy saw Pfalzgraf's license plate covered in snow—a traffic violation—the deputy took the opportunity to pull Pfalzgraf over.

The deputy, Ben Reisner, questioned Pfalzgraf about his travel plans and began to suspect drugs were at play. Deputy

Reisner claimed to observe Pfalzgraf with dilated pupils and speaking with a "dry mouth." He also considered Pfalzgraf's explanations "odd." Deputy Reisner then called for back-up, frisked Pfalzgraf, searched his car, conducted a dog sniff, and eventually searched Pfalzgraf's person, revealing a bag of methamphetamine in Pfalzgraf's pocket.

After Pfalzgraf's state charges were dismissed, he sued Deputy Reisner and Rusk County, claiming that the traffic stop violated his Fourth Amendment rights. Specifically, he claimed that (1) the initial protective frisk was unlawful, (2) the stop was unlawfully extended, and (3) the search of his person was unsupported by probable cause.

The district court granted partial summary judgment for Pfalzgraf on his frisk and extended-search claims. In its view, no reasonable jury could find either that Deputy Reisner had reasonable suspicion that Pfalzgraf was armed and dangerous, as necessary to justify the frisk, or that he was involved in a distinct drug offense to justify extending the stop. Deputy Reisner now appeals, claiming that genuine disputes of fact precluded summary judgment for Pfalzgraf.

We affirm in part and reverse in part. We agree with the district court that nothing suggested Pfalzgraf was armed or dangerous during the stop. But we find genuine disputes over facts that, if taken in Deputy Reisner's favor, could support reasonable suspicion of a drug offense that would provide a constitutional justification for extending the stop. Perhaps the district court's skepticism of the reasons for the extended stop is well-founded, but that is a question for the jury.

## I. Background

Deputy Reisner was on patrol in the early hours of the morning when he found himself behind Pfalzgraf's truck driving south on Highway 27 in Ladysmith, Wisconsin. He saw Pfalzgraf signal to turn into a Kwik Trip gas station, where several police vehicles were parked, before turning the signal off and continuing south. After a short distance, he observed Pfalzgraf exit the highway and start driving the opposite way on a side-street. Finding it "odd" that Pfalzgraf would drive south on the highway only to turn off and head north, Deputy Reisner followed Pfalzgraf. Pfalzgraf then turned back onto the highway and continued heading north. While following Pfalzgraf, Deputy Reisner observed that Pfalzgraf's license plate was obscured with snow, a traffic violation. *See* Wis. Stat. § 341.15. As they approached the next intersection, Deputy Reisner flashed his lights and initiated a traffic stop.

The entire interaction between Deputy Reisner and Pfalzgraf was captured on Reisner's body-worn camera. As Deputy Reisner approached Pfalzgraf's vehicle, he explained to Pfalzgraf that he had pulled him over because of the obstructed license plate and had observed Pfalzgraf's change of direction on Highway 27. When asked about his travel plans, Pfalzgraf explained that he had left his house to buy cigarettes. But he changed his mind when he saw the squad cars at the Kwik Trip and "turned around to go back to [his] house." Remarking that Pfalzgraf's story "seem[ed] a little odd," Deputy Reisner took Pfalzgraf's license and insurance information back to his squad car, scraping the snow from Pfalzgraf's license plate on the way.

In his police report and deposition, Deputy Reisner explained that he found Pfalzgraf to be "irritable" and "animated" during this initial interaction, and that Pfalzgraf appeared to have pulled the brim of his hat lower to shield his eyes. Deputy Reisner further claimed that Pfalzgraf's mouth seemed dry and his pupils dilated, which Reisner considered signs of intoxication given his training and experience. Admitting that he had never interacted with Pfalzgraf before, Deputy Reisner said he had seen Pfalzgraf's truck parked outside a residence known for drug trafficking on several occasions. The camera footage does not definitively confirm or deny any of these assertions.

Once Pfalzgraf's license plate was clear of snow, Deputy Reisner radioed dispatch, asking to run Pfalzgraf's name and license plate in the system. A second officer then arrived, and Reisner told her that he suspected Pfalzgraf of a drug crime, stating "961, something going on here"—a reference to Wisconsin's statutory chapter on drug offenses. Returning to Pfalzgraf's vehicle, Deputy Reisner asked Pfalzgraf to step out of his truck and asked if he had any weapons on his person (to which Pfalzgraf replied "no"). Deputy Reisner frisked the outside of Pfalzgraf's clothing despite Pfalzgraf's protests that he "didn't do nothing." He then continued to question Pfalzgraf for several minutes about his "agitated" demeanor, avoiding the gas station, and whether Pfalzgraf had taken any controlled substances. Pfalzgraf denied taking drugs, and when further probed by Reisner, declared that he could pass a field sobriety test and a blood test.

Unconvinced, Deputy Reisner obtained Pfalzgraf's verbal consent to conduct a K-9 sniff of his vehicle. Deputy Reisner walked his K-9, Boone, around the exterior of the vehicle, and

according to Reisner (but disputed by Pfalzgraf), Boone changed his behavior consistent with the presence of controlled substances. Now about fifteen minutes into the stop, Deputy Reisner told Pfalzgraf that Boone had detected drugs and received his permission to manually search the truck. Deputy Reisner searched the truck's cab, engine bay, and undercarriage, but found no contraband or drug paraphernalia.

Finally, almost thirty minutes into the stop, Deputy Reisner asked Pfalzgraf whether he had anything in his pockets, which Pfalzgraf denied. Deputy Reisner then stated his intention to search Pfalzgraf, and instructed Pfalzgraf to remove his hands from his pockets. Seeing Pfalzgraf gripping something, he told Pfalzgraf to open his fist, revealing a bag that Deputy Reisner identified as, and was later confirmed to be, methamphetamine. Pfalzgraf admitted to using methamphetamine earlier in the day and acknowledged that his blood was likely to test positive for that substance. Deputy Reisner placed Pfalzgraf under arrest for possession of methamphetamine and operating a vehicle while under the influence of a controlled substance.

Pfalzgraf was later charged in state court, but all charges were dismissed after the State agreed with Pfalzgraf that the traffic stop had been unlawfully extended and that any evidence obtained from it should be suppressed. Pfalzgraf then sued Deputy Reisner and his employer, Rusk County, in federal court under Title 42 U.S.C. § 1983, alleging three Fourth Amendment violations. Count I alleged that Deputy Reisner patted him down early in the traffic stop without reasonable suspicion that Pfalzgraf was armed or dangerous. Count II asserted that Deputy Reisner deviated from the initial mission of the stop—the obstructed license plate—and extended the

stop beyond what was necessary for resolving the traffic violation. Count III maintained that Reisner searched Pfalzgraf's pockets without probable cause or consent.

After the parties cross-moved for summary judgment, the district court denied Defendants' motion and granted Pfalzgraf's motion in part. The court granted summary judgment in favor of Pfalzgraf as to liability, but not damages, for his unlawful-frisk (Count I) and extended-search (Count II) claims.

As to the extended-search claim, the district court held that no reasonable jury could find Deputy Reisner had reasonable suspicion to extend the stop beyond what was necessary for the obstructed-license-plate violation; *i.e.* clearing the obstruction and issuing a citation. It deemed the body-worn camera footage inconsistent with Deputy Reisner's testimony that Pfalzgraf was acting in an agitated, suspicious manner suggesting drug use. And it discounted Deputy Reisner's allegation that Pfalzgraf had a dry mouth, noting that Reisner had never interacted with Pfalzgraf before and thus did not know what Pfalzgraf's voice normally sounded like. The court denied qualified immunity on this claim as well, reading *State v. Hogan*—a Wisconsin Supreme Court case with analogous facts—to establish that dilated pupils and nervous demeanor do not create reasonable suspicion of a drug offense. *See* 2015 WI 76, ¶ 50, 364 Wis. 2d 167.

As to the frisk claim, the district court held that Deputy Reisner lacked any articulable suspicion that Pfalzgraf was armed or dangerous. It rejected Reisner's arguments that suspicion of a drug crime and the context of the stop occurring late at night in a rural area could create reasonable suspicion that Pfalzgraf was armed. These circumstances, it reasoned,

did not give rise to a suspicion particularized to Pfalzgraf. The court also denied qualified immunity as to this claim, pointing to *United States v. Williams*, 731 F.3d 678 (7th Cir. 2013), for clearly establishing that a lawful frisk requires an individualized suspicion of danger.

Finally, the district court denied both summary-judgment motions with respect to the unreasonable-search claim (Count III) based on Deputy Reisner's search of Pfalzgraf's pockets, which revealed the methamphetamine. It found a genuine dispute of material fact over whether Boone's changed behavior after circling the exterior of Pfalzgraf's truck was an alert that drugs were present. If Boone's behavior did constitute such an alert, the court concluded that Deputy Reisner was at least entitled to qualified immunity as to the subsequent search. If it did not, Reisner would not have had probable cause to conduct the personal search based on suspected drugs. The court, therefore, reserved for the jury the factual question of whether Boone had alerted Deputy Reisner to the presence of drugs.

Following the district court's order granting partial summary judgment, Pfalzgraf voluntarily dismissed his unreasonable-search claim under Count III, and a jury trial proceeded to determine damages for his unlawful-frisk and extended-stop claims. The jury ultimately awarded Pfalzgraf $500 in compensatory damages and $3,500 in punitive damages. Its verdict form did not specify what portion of these damages was attributable to each of Pfalzgraf's two claims. Defendants appealed, seeking to vacate the jury award because "[t]he District Court's order granting Plaintiff's motion for partial summary judgment was in error due to the court resolving genuine issues of material fact."

## II. Discussion

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Hess v. Board of Trustees*, 839 F.3d 668, 673 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). We review the district court's partial grant of summary judgment *de novo*, and we construe the facts in the light most favorable to Defendants as the nonmoving parties. *Ontiveros v. Exxon Mobil Corp.*, 148 F.4th 521, 527 (7th Cir. 2025). In this case, Deputy Reisner's body-worn camera captured the relevant interaction between him and Pfalzgraf. We have reviewed that footage. Still, only "when video footage clearly contradicts the nonmovant's claims" may we "consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018).

Defendants argue that genuine disputes of fact precluded summary judgment as to liability on Pfalzgraf's frisk and extended-search claims. At the outset, Pfalzgraf suggests that Defendants waived any argument that genuine disputes of fact exist in this case because, in cross-moving for summary judgment themselves, Defendants affirmatively argued the absence of genuine disputes of fact.

But that is not how cross-motions for summary judgment work. A party's assertion that no facts are in genuine dispute for *its own* motion for summary judgment is not a concession on appeal. *See Market Street Associates Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991) ("Moving for summary judgment is not a waiver of the right to a trial if the motion is denied."). Rather, we treat each cross-motion for summary judgment independently, and "the legal theories the movant advances in support of a Rule 56 motion and the assertion that

there is no issue of material fact may not be used against the movant when the court rules on the opponent's motion." 10A Wright & Miller's Federal Practice and Procedure § 2720 (4th ed. Apr. 2026 update).

With waiver aside, we turn to the merits.

### A. Extended-Search Claim

"A seizure justified only by a police-observed traffic violation … [violates the Fourth Amendment] if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (cleaned up). But a stop may be lawfully extended if "the officer has reasonable suspicion of other criminal activity." *United States v. Cole*, 21 F.4th 421, 428 (7th Cir. 2021) (*en banc*).

Here, Deputy Reisner lawfully stopped Pfalzgraf for an obstructed license plate. But there is no dispute that the stop extended beyond what was necessary for clearing the license plate, issuing a citation, and "ordinary inquiries incident to [the traffic] stop." *Rodriguez*, 575 U.S. at 355 (citation omitted). Instead, Deputy Reisner continued to question Pfalzgraf, search the truck, and eventually search Pfalzgraf's person because he suspected Pfalzgraf had taken drugs. The question, then, is whether Reisner had reasonable suspicion of a separate drug offense justifying his extension of the stop. *Cole*, 21 F.4th at 428. The district court ruled that Deputy Reisner lacked reasonable suspicion of a drug offense as a matter of law, but Defendants urge that genuine disputes of fact precluded summary judgment on this score. We agree and reverse summary judgment as to this claim.

"Reasonable suspicion is an objective standard, considering the totality of the circumstances" known to the officer at the time of the stop. *United States v. Lewis*, 920 F.3d 483, 493 (7th Cir. 2019). It requires "'specific and articulable facts which, taken together with rational inferences from those facts,' suggest criminal activity." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Defendants point to several factors supporting Deputy Reisner's suspicion that Pfalzgraf may have been under the influence or in possession of drugs: (1) the observed driving pattern that Reisner considered "odd"; (2) Pfalzgraf's heightened emotional state and visible agitation; (3) his dilated pupils; (4) his apparent dry mouth; (5) his inconsistent explanations for his driving pattern; (6) his admission that he avoided the Kwik Trip parking lot to avoid the officers parked there; and (7) Deputy Reisner's previous sightings of Pfalzgraf's truck at a residence known for drug trafficking.

The district court discounted many of Deputy Reisner's assertions about Pfalzgraf's behavior because it found them inconsistent with the body-worn camera footage. After reviewing the footage, the court found Pfalzgraf's behavior consistent with "benign reasons [why] a person who has been followed and then pulled over by an officer could be agitated by the interaction." It also concluded that Reisner's observations of dry mouth and dilated pupils were unsupported by the footage. And Deputy Reisner lacked experience interacting with Pfalzgraf to substantiate his claims.

But at summary judgment, video footage must "clearly contradict[]" a nonmovant's claim for us not to take the facts in its favor. *Horton*, 883 F.3d at 944. Here, while the district

court's view of the video footage was reasonable, the footage does not *clearly contradict* Deputy Reisner's claims. Pfalzgraf does avoid the flashlight and speaks in an agitated manner in the footage, among other behaviors. And a jury could conclude that this behavior supported the inference that he was under the influence of drugs. Thus, drawing all possible inferences in Defendants' favor, there remain genuine disputes as to whether Pfalzgraf's behavior seen in the camera footage supported Deputy Reisner's independent reasonable suspicion.

For these reasons, we reverse the district court's grant of summary judgment on Pfalzgraf's extended-search claim. And we remand for a jury to resolve whether Deputy Reisner gained reasonable suspicion of a drug offense during the traffic stop.

### B.  Unlawful-Frisk Claim

Defendants also argue that there are genuine disputes of fact with respect to Pfalzgraf's unlawful-frisk claim. We disagree and affirm summary judgment as to liability on this claim.

"[A]n officer performing a *Terry* stop may not automatically frisk the individual subject to the stop." *Williams*, 731 F.3d at 686. "[T]he officer must also be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others." *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999).

Here, Defendants identify no articulable facts that would suggest Pfalzgraf was armed or posed a threat to Deputy Reisner during the traffic stop. Deputy Reisner's observations, by his own admissions, established only the suspicion that

Pfalzgraf was "under the influence." Defendants cite cases suggesting that because "guns often accompany drugs," Deputy Reisner's suspicion also supports an inference that Pfalzgraf was armed and dangerous. *See United States v. Jones*, 289 F. App'x 593, 597 (4th Cir. 2008). But those cases involve suspected drug *trafficking*, not drug impairment. *See id.*; *Martin v. Forest County*, 677 F. Supp. 3d 853, 865–66 (E.D. Wis. 2023); *Cary v. City of Fond Du Lac*, 2021 WL 1381190, at *7 (E.D. Wis. Apr. 12, 2021). Even accepting that drug trafficking is correlated with the possession of weapons, Defendants identify nothing in the record that suggests mere suspicion of drug use gives rise to such a broad inference.

Defendants also argue that the surrounding context of the stop—at night and in a rural area—supported an inference that Pfalzgraf might be armed. But "[e]ven in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted." *Doornbos v. City of Chicago*, 868 F.3d 572, 582 (7th Cir. 2017) (quoting *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990)). Here, the stop's remote context cannot save Defendants from the absence of individualized suspicion.

Defendants also fault the district court for discounting that Pfalzgraf was a larger man (6'2" and 265 pounds), kept his hands in his pockets during the stop, and appeared agitated. But we have made clear that "the simple fact that one's hands are in one's pockets" is "of little value" for establishing that an individual is armed and dangerous. *Williams*, 731 F.3d at 689. That is especially true on these facts, where Pfalzgraf was asked to stand outside on a frigid January morning for a prolonged period. And Defendants cite no authority for the

dubious proposition that an individual's size gives an officer reasonable suspicion that he is armed. Finally, while agitated behavior may be an additional factor in determining that an individual is dangerous, it provides no individualized basis for concluding that Pfalzgraf was dangerous *and armed*. *Cf. Brown*, 188 F.3d at 865 ("Nervousness or refusal to make eye contact alone will not justify a *Terry* stop and pat-down, but such behavior may be considered as a factor in the totality of circumstances." (citation omitted)).

Nor can Defendants establish a genuine dispute of fact as to qualified immunity on this claim, as they suggest late in their brief.[1] Qualified immunity is an affirmative defense that shields state officials from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Russell v. Comstock*, 167 F.4th 984, 988 (7th Cir. 2026) (citation omitted). A plaintiff can defeat qualified immunity by pointing to "a general constitutional rule already identified in the decisional law [that] applies with obvious clarity to the specific conduct in question." *Davis v. City of Elgin*, 180 F.4th 1023, 1028 (7th Cir. 2026) (quoting *Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021)).

Pfalzgraf meets that burden here. Our precedents clearly establish the principle that a lawful protective frisk requires individualized suspicion that a suspect is armed and

---

[1] Because Defendants have only appealed the district court's grant of Pfalzgraf's motion for summary judgment, we only consider whether there is a genuine dispute of fact as to qualified immunity. Defendants do not argue that Deputy Reisner was entitled to qualified immunity as a matter of law, as they are not appealing the denial of their own motion for summary judgment.

dangerous. *E.g.*, *Brown*, 188 F.3d at 864; *Williams*, 731 F.3d at 686; *Doornbos*, 868 F.3d at 582; *United States v. Adair*, 925 F.3d 931, 937 (7th Cir. 2019). To date, Defendants have not identified a single individualized fact suggesting that Pfalzgraf was armed, much less identified a dispute for a jury to resolve on this question. Deputy Reisner's conduct—performing an intrusive frisk without reasonable suspicion of danger—violated a "clearly established" principle that applies with "obvious clarity" to this case. *Davis*, 180 F.4th at 1028.

### III. Conclusion

We REVERSE the district court's partial grant of summary judgment as to Pfalzgraf's extended-search claim. We AFFIRM the district court's partial grant of summary judgment as to Pfalzgraf's unlawful-frisk claim. Because neither party has offered any basis for apportioning the jury's damages award between the two claims, we VACATE the jury award and REMAND for further proceedings.